UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DONALD LEE KISSNER,

        Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

        Defendants.

_____/

Case No. 1:22-cv-992

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff Donald Lee Kissner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 12.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).[1] The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a

---

[1] This case is also before the Court for review under Rule 21 of the Federal Rules of Civil Procedure, which the Court may conduct at any time, with or without motion. Fed. R. Civ. P. 21.

defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[2]

Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying Rules 18, 20, and 21 regarding joinder, the Court will drop Defendants Mike Walczak, P. Schreiber, J. Dunigan, J. Houck, K. Wakefield, S. Clark, Unknown Hulbert, Unknown Parson, and Unknown Clark, and dismiss Plaintiff's claims against them without prejudice.

As to the Defendants and claims that remain, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's remaining claims for failure to state a claim. Further, the Court will deny Plaintiff's motion to reinstate Defendant Kunik.

---

[2] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

**I.       Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff is serving several sentences, including the following:

1. concurrent sentences of 6 years, 11 months to 15 years, and 2 years, 6 months to 7 years, 6 months, following his guilty plea to charges of assault with intent to do great bodily harm less than murder and preparation to commit arson in Shiawassee County Circuit Court Case No. 2020-0000005314-FC;

2. a concurrent sentence of 3 years, 11 months to 15 years following his guilty plea to a charge of witness intimidation in Shiawassee County Circuit Court Case No. 2021-0000005692-FH, (a crime Plaintiff committed while he was in pretrial detention for the charges above); and

3. those concurrent sentences were to be served consecutively to sentences imposed in three other Shiawassee County Circuit Court prosecutions (Case No. 2009-0000008457-FH, Case No. 2004-0000000993-FH, and Case No. 2001-0000007380-FH), for which Plaintiff was on parole when he committed the arson-preparation and assault crimes.

*See* MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=383562 (last visited Dec. 12, 2022); Shiawassee County Circuit Court Case Inquiry, https://www.shiawassee.net/Circuit-Court/Circuit-Court-Case-Inquiry.aspx (click "Michigan Courts One Court of Justice," search "Donald Kissner") (last visited Dec. 12, 2022).

Plaintiff acknowledges that a warrant for his arrest was issued during August of 2020. (ECF No. 1, PageID.8.) He turned himself in on August 31, 2020. (*Id.*) He has been in jail or prison since then. In Plaintiff's complaint, he describes his "Prisoner Status" as "pretrial detainee," "convicted and sentenced state prisoner," and a parolee. By the time Petitioner filed his complaint, however, he was a convicted and sentenced state prisoner. He was not detained pending trial nor was he on parole.

4

Plaintiff's initial complaint focuses on procedural shortcomings with respect to the revocation of his parole. He contends that Defendant Parole Agent Jessica L. Kunik failed to comply with State of Michigan administrative rules and statutes regarding proper procedures to revoke parole. Essentially Plaintiff argues that Kunik should have commenced parole revocation proceedings such that Plaintiff would have been housed with the MDOC rather than the Shiawassee County Jail pending his criminal prosecutions.

On October 5, 2021, a few days after he was sentenced by the Shiawassee County Circuit Court, Plaintiff was transferred to the MDOC Reception and Guidance Center in Jackson. Plaintiff indicates that, at some point, he communicated with Defendant Parole Board Chairman Brian Shipman, Defendant Acting Administrator of the Parole Board Greg Straub, and Defendant MDOC Director Heidi Washington regarding his claims. He received no response.

On December 15, 2021, Plaintiff was transferred to the Michigan Reformatory. At that time, he began communicating with Defendant Records Office Supervisor D. Casillas regarding the issue. Again, Plaintiff received no response.

Eventually, Plaintiff filed grievances against all five Defendants claiming that they denied him equal protection of the laws and due process by failing to conduct parole revocation proceedings as required by state statutes and regulations.

Plaintiff seeks several different types of relief. First, he claims he should be entitled to jail credit in the amount of 387 days for the time he spent in the Shiawassee County Jail without a parole revocation hearing. It appears that Plaintiff is seeking that credit against his sentences from the 2020 and 2021 prosecutions. Plaintiff also contends that the failure to hold a parole revocation hearing left him in a parole detainer status that prevented him from release on bond pending

resolution of his criminal trials. Plaintiff also asks the Court to resolve several questions regarding state law. (Compl., ECF No. 1, PageID.15.)

Plaintiff filed his complaint in the United States District Court for the Eastern District of Michigan. While the case was pending in that Court, Plaintiff filed an additional pleading which the judge accepted as a supplement to the initial complaint. (Order, ECF No. 9, PageID.145 ("[T]he original complaint (ECF No. 1) and August 29 filing (ECF No. 6) are collectively the operative complaint . . . .").)

By way of that supplement, Plaintiff sued Michigan Reformatory personnel—Warden M. Walczak, Deputy Warden P. Schreiber, Assistant Deputy Warden J. Dunigan, Classification Director J. Houck, Food Service Director K. Wakefield, Food Service Supervisor S. Clark, Food Service Workers Unknown Hulbert and Unknown Parson, and Corrections Officer Unknown Clark (collectively the Michigan Reformatory Defendants)—for retaliation against Plaintiff for exercising his First Amendment rights and for failing to remedy the retaliation. Plaintiff alleges that the events giving rise to the Michigan Reformatory Defendants' liability occurred during March, April, June, and July of 2022. The crux of Plaintiff's claim is that Defendants retaliated against Plaintiff for talking about the matters at issue in his initial complaint by filing false misconducts against him and otherwise interfering with Plaintiff's prison employment or by failing to fix those problems. Plaintiff asks the Court to hold the Michigan Reformatory Defendants "criminally liable for harassment or retaliation of first amendment rights . . . ." (Supp., ECF No. 6, PageID.80.)

The Eastern District Court reviewed Plaintiff's complaint, as supplemented, and concluded that Plaintiff failed to state a viable claim against Defendant Kunik. Defendant Kunik, the Eastern District Court opined, was the only individual connecting Plaintiff's action with the Eastern

6

District. Having severed that connection, the Eastern District Court concluded that the case could be more conveniently handled in this Court and transferred the action here.

Against that backdrop, the Court will evaluate Plaintiff's joinder of these parties and the sufficiency of his allegations.

**II.    Misjoinder**

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v.*

*Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was

also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners [to] immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to

9

circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of Section 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The Court will look to the first clear factual allegations to determine which portions of the action should be considered related. Plaintiff's first claim, chronologically and as presented in the complaint, relates to the failure of dismissed Defendant Kunik and remaining Defendants Washington, Shipman, Straub, and Casillas to afford Plaintiff the state regulatory and statutory procedures relating to revocation of parole, which he contends he was due. Even accepting that those Defendants' failures to provide Plaintiff the process he claims he was due are all related and all arise out of the same transaction or occurrence, Plaintiff has not and cannot show that any of the Michigan Reformatory Defendants participated in, or are somehow liable for, the other Defendants' failure. Indeed, there appears to be no transactional relationship between the claims Plaintiff raises in the initial complaint and the claims he raises in the supplement. Accordingly, the Court concludes that the claims Plaintiff alleges against Defendants Walczak, Schreiber, Dunigan, Houck, Wakefield, S. Clark, Hulbert, Parson, and Unknown Clark are misjoined.

Because the Court has concluded that Plaintiff has improperly joined the Michigan Reformatory Defendants, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such

terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under Section 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000).

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999) . . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d 153, 157–59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id.* at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff alleges that the misjoined Defendants engaged in conduct during a period beginning in March 2022, and ending in July 2022. Whether or not Plaintiff receives the benefit of tolling during the administrative exhaustion period, *see Brown*, 209 F.3d at 596, and during the pendency of this action, *Kalasho*, 66 F. App'x at 611, Plaintiff has sufficient time in the limitations period to file new complaints against the misjoined Defendants, and he will not suffer gratuitous harm if these Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and drop the Michigan Reformatory Defendants from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997); *Carney*, 2008 WL 485204, at *3. If Plaintiff wishes to proceed with his claims against the dismissed Defendants, he shall do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.[3]

## III. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

---

[3] Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined.

13

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due process violations

#### 1. Parole detainer

At least some part of Plaintiff's due process claim is focused on the impact of the parole detainer on Plaintiff's ability to be released on bond pending resolution of the Shiawassee County criminal prosecutions. Under Michigan law, "[w]hen a parolee is arrested for a new criminal offense, he is held on a parole detainer until he is convicted of that offense . . . ." *People v. Seiders*, 686 N.W.2d 821, 823 (Mich. Ct. App. 2004). It appears the detainer was appropriately put in place under state law when Plaintiff was arrested. Plaintiff offers no facts to support an inference that the detainer was "illegal." Accordingly, he has failed to state a claim for violation of his constitutional rights with regard to the parole detainer.

## 2. Parole revocation

The heart of Plaintiff's due process claim is not the parole detainer; it is the failure of Defendants to move forward with parole revocation proceedings. Plaintiff cites a significant number of state statutes and administrative rules which he claims Defendants violated. Plaintiff equates Defendants' failure to follow those statutes and rules as a denial of due process. On that point, however, he is wrong.

Plaintiff is correct in claiming that parole cannot be revoked without due process protection. As the Supreme Court recognized in *Morrissey v. Brewer*, 408 U.S. 471 (1972):

> [T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others. It is hardly useful any longer to try to deal with this problem in terms of whether the parolee's liberty is a 'right' or a 'privilege.' By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment. Its termination calls for some orderly process, however informal.

*Id.* at 482.

The *Morrissey* Court recognized that there were two distinct stages in the typical process of parole revocation: the initial arrest and detention, and the formal revocation of parole. *Id.* at 485. Here, however, Plaintiff was not simply arrested and detained for a parole violation, he was arrested and detained for committing a new criminal offense. Plaintiff, therefore, received even greater due process protection than might otherwise be required to protect Plaintiff's interests in his parole "liberty." Similarly, if Plaintiff's parole were to be revoked because he was convicted of a new felony, the process attendant to that conviction—process sufficient to protect the liberty of a free person—would necessarily be sufficient to protect Plaintiff's interests in his parole "liberty." Therefore, Plaintiff's constitutional due process rights were fully protected following his arrest during August of 2020.

Moreover, notwithstanding Plaintiff's claim that he is entitled to a parole revocation hearing, the Michigan Supreme Court has concluded that he is not. In *People v. Idziak*, 773 N.W.2d 616 (Mich. 2009), the Michigan Supreme Court determined that no parole violation or revocation proceedings are required where the parole violation is conviction of a felony. *Id*. at 636 ("[W]hen, as here, the parole violation is 'conviction for a felony or misdemeanor punishable by imprisonment,' the Parole Board does not 'determine [] the matter,' MCL 791.241, by holding a parole violation hearing because no parole violation hearing is required. MCL 791.240a(3)." (footnote omitted)); *see also* MDOC Policy Directive 06.06.100, ¶ R (eff. Jul. 1, 2018) ("A parolee convicted of a felony while on parole who receives a new sentence to be served with the Department shall be found to have violated parole based on that new conviction and sentence. A parole violation hearing is not required."); *Lockridge v. Curtin*, No. 09-10145, 2014 WL 4536926, at *10 (E.D. Mich. Sept. 11, 2014) ("Under Michigan law, a parolee is not entitled to a revocation hearing where the revocation is based upon a conviction for a new felony offense."). Thus, at least as of the point at which he was actually convicted of the new felony, he was not entitled to a parole revocation hearing. And, as noted above, the state could hold him on a parole detainer until he was convicted (or acquitted).

For these reasons, Plaintiff's allegations do not support an inference that his due process rights have been violated.

### B. Equal protection

The complaint makes reference to the constitutional protection provided by the Equal Protection Clause of the Fourteenth Amendment, but Plaintiff does not explain how Defendants denied him equal protection of the laws. The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The threshold element of an equal protection claim is disparate treatment. *Scarbrough*

*v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011).

An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff fails to make this threshold showing. Indeed, he fails to allege any facts to support an equal protection claim. Plaintiff's complaint only mentions "equal protection." He has, accordingly, failed to state a claim for a violation of his equal protection rights.

### C. Jail credit

Finally, Plaintiff's claim that he is entitled to credit against his recent sentences for the time he spent in jail pending resolution of the Shiawassee County criminal prosecutions is not cognizable in an action under Section 1983. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (stating "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody"). In *Preiser* the Court confirmed that if restoration of credits would shorten the length of confinement in prison, habeas corpus is the appropriate remedy. *Id.* at 487. Because Plaintiff specifically asks that he receive credit against his

17

recent sentences for the time he spent in jail before his convictions, habeas corpus is his exclusive remedy. *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *see also Johnson v. Freeburn*, 29 F. Supp. 2d 764, 769–70 (E.D. Mich. 1998) (stating that "[t]he Supreme Court noted that when the general provisions of § 1983 overlap with the specific provisions of the habeas corpus statute under 28 U.S.C. § 2254, habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983"). Plaintiff's request for credit against his sentence fails to state a claim cognizable under Section 1983.

### IV.     Plaintiff's Motion to Reinstate Defendant Kunik

As noted above, the Eastern District of Michigan dismissed Defendant Kunik without prejudice and then transferred the action to this Court, where venue is proper for the remaining Defendants. Following the transfer of the action to this Court, Plaintiff filed a motion to reinstate Defendant Kunik. (ECF No. 13.) The United States District Court for the Eastern District of Michigan concluded that Plaintiff "failed to plead a viable claim against Kunik." (Order, ECF No. 9, PageID.144.) For the reasons stated above, this Court agrees that Plaintiff has failed to state a claim against Kunik. Nothing Plaintiff states in his motion alters that conclusion. Accordingly, the Court will deny Plaintiff's motion to reinstate Defendant Kunik.

### Conclusion

The Court has reviewed Plaintiff's complaint, as supplemented, under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that the Michigan Reformatory Defendants are misjoined. Accordingly, the Court will drop Defendants Walczak, Schreiber, Dunigan, Houck, Wakefield, S. Clark, Hulbert, Parson, and Unknown Clark and dismiss Plaintiff's claims against them without prejudice.

With regard to the remaining claims and parties, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Further, Plaintiff's motion to reinstate Defendant Kunik will be denied. The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   December 15, 2022                         /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   U.S. Magistrate Judge